# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| CONOCOPHILLIPS PETROZUATA B.V., PHILLIPS PETROLEUM COMPANY VENEZUELA LIMITED, CONOCOPHILLIPS GULF OF PARIA B.V. and CONOCOPHILLIPS HAMACA B.V., <br><br> Plaintiffs, <br><br> v. <br><br> PETRÓLEOS DE VENEZUELA, S.A., PDVSA PETRÓLEO, S.A., PDV HOLDING, INC., and ROSNEFT TRADING S.A., <br><br> Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) C.A. No. _____ |

## COMPLAINT

Plaintiffs ConocoPhillips Petrozuata B.V. ("ConocoPetrozuata"), Phillips Petroleum Company Venezuela Limited ("ConocoVenezuela"), ConocoPhillips Gulf of Paria B.V. ("ConocoGulf") and ConocoPhillips Hamaca B.V. ("ConocoHamaca") (altogether, "Plaintiffs"), by their undersigned attorneys, and as for their Complaint against Defendants Petróleos de Venezuela, S.A. ("PDVSA"), PDVSA Petróleo, S.A. ("PPSA"), PDV Holding, Inc. ("PDVH") and Rosneft Trading S.A. ("Rosneft") (altogether, "Defendants") allege a cause of action for fraudulent transfers as follows:

### Nature of the Action

1. Plaintiffs are multi-billion dollar creditors of the Bolivarian Republic of Venezuela ("Venezuela"), Venezuela's national oil company, PDVSA, and two of PDVSA's subsidiaries, PPSA and PDVH.

2. Venezuela confiscated and nationalized Plaintiffs' interests in major projects in

Venezuela worth billions of dollars.  Having not received any compensation, Plaintiffs brought three of the largest arbitration claims ever against Venezuela, PDVSA and PPSA.

3. One of those arbitration claims was brought by Plaintiffs ConocoPetrozuata, ConocoHamaca and ConocoGulf against Venezuela before the World Bank's International Center for Settlement of Investment Disputes ("ICSID") pursuant to the Netherlands-Venezuela Bilateral Investment Treaty (the "BIT").  In September 2013, the ICSID tribunal ruled that Venezuela's expropriation violated the BIT and proceeded to set a schedule to fix the amount of compensation due.  Those proceedings are ongoing.

4. The other two arbitration claims were brought in October 2014 by Plaintiffs ConocoPetrozuata and ConocoVenezuela against PDVSA, PPSA and Corpoguanipa, S.A., before the International Chamber of Commerce pursuant to contracts governing investments in the Petrozuata and Hamaca projects (the "ICC Arbitrations").  Corpoguanipa, S.A is a wholly-owned subsidiary of PPSA.  The ICC Arbitrations were consolidated and the final hearing on liability and quantum has been completed.

5. Venezuela's, PDVSA's and PDVH's most valuable assets in the United States are their interests in CITGO Petroleum Corporation and affiliates ("CITGO Petroleum"), held through CITGO Holding, Inc. (altogether, "CITGO").  PPSA is PDVSA's agent for the export and sale of crude oil.  Upon information and belief, PPSA's most valuable assets are oil and gas and/or accounts receivable in the hands of crude oil purchasers.

6. After the 2013 ICSID decision in favor of Plaintiffs, Venezuela and PDVSA, along with PDVSA's direct and indirect subsidiaries and agents PDVH, CITGO Holding, Inc. and CITGO Petroleum, undertook a deliberate campaign to liquidate the value of CITGO and remove assets from the United States to Venezuela in order to hinder, delay or defraud their

creditors, including Plaintiffs.

7. They first attempted, but failed, to sell CITGO outright in 2014. Then in 2015, they liquidated and expatriated ~US $2.8 billion worth of CITGO through a debt offering and dividend recapitalization scheme, whereby CITGO assets were encumbered to fund a multi-billion dollar special dividend, ultimately paid by PDVH to PDVSA, and then by PDVSA to Venezuela, for nothing in return. PDVSA, PDVH and CITGO Holding, Inc. also removed millions of dollars in CITGO assets through a series of transactions using CITGO Petroleum as PDVSA's procurement or payment agent. Then, in October 2016, PDVSA issued billions of dollars in new debt secured by a pledge from PDVH of 50.1% of PDVH's equity in CITGO Holding, Inc. (the parent of CITGO Petroleum). The proceeds were removed to Venezuela and PDVH received nothing in return for the pledge of 50.1% of CITGO.

8. On October 6, 2016, Plaintiffs brought claims based on those transactions in this Court against PDVSA, PDVH, CITGO Holding, Inc. and CITGO Petroleum under the Delaware Uniform Fraudulent Transfer Act, 6 Del. C. § 1301 *et seq.* ("DUFTA"). *See ConocoPhillips Petrozuata B.V. v. Petróleos de Venezuela, S.A.,* No. 16 Civ. 904 (D. Del.), Compl. (D.I. 1). A copy of the complaint in that action is appended hereto and made a part hereof as **Exhibit A** (the "First Complaint").

9. After Plaintiffs brought that action, Defendants completed a new transfer to destroy and remove remaining value in an effort to frustrate, delay and avoid satisfaction of their creditors' claims. Indeed, undeterred by the pending fraudulent transfer litigation, on November 30, 2016, PDVSA reportedly monetized and removed ~US $1.5 billion of value out of PDVH, PPSA and CITGO. According to PDVSA, by that transaction PDVSA "used the remaining 49.9% [of CITGO] to raise new financing."

10. As described below, according to media reports and a UCC-1 filing, PDVSA raised ~US $1.5 billion from this transaction from Rosneft, in exchange for PDVH's equity pledge and crude oil sales and/or delivery obligations undertaken or assumed by PPSA (the "Rosneft Transaction"). PDVSA received all the proceeds and, upon information and belief, neither PDVH nor PPSA received anything in return for the obligations given to Rosneft. Upon information and belief, PDVSA then transferred the proceeds from the Rosneft Transaction to Venezuela for nothing in return.

11. Plaintiffs bring this new DUFTA action against PDVSA, PPSA, PDVH and Rosneft in relation to the Rosneft Transaction. DUFTA provides for remedies including, among others, the avoidance of transfers or obligations, judgments, injunctions against further disposition, and/or the appointment of a receiver to take charge of assets transferred.

## Parties

12. Plaintiff ConocoPetrozuata is a subsidiary of ConocoPhillips Company. ConocoPetrozuata is a Dutch company having its registered office at New Babylon Gardens, Anna van Buerenplein 41, 2595 DA, Den Haag, Netherlands.

13. Plaintiff ConocoHamaca is a subsidiary of ConocoPhillips Company. ConocoHamaca is a Dutch company having its registered office at New Babylon Gardens, Anna van Buerenplein 41, 2595 DA, Den Haag, Netherlands.

14. Plaintiff ConocoVenezuela is a subsidiary of ConocoHamaca. ConocoVenezuela is a Bermuda company having its registered office at c/o ConocoPhillips Company, 600 North Dairy Ashford, Houston, Texas, 77079.

15. Plaintiff ConocoGulf is a subsidiary of ConocoPhillips Company. ConocoGulf is a Dutch company having its registered office at New Babylon Gardens, Anna van Buerenplein

41, 2595 DA, Den Haag, Netherlands.

16. Defendant PDVH is a Delaware corporation with its registered office at 1209 Orange Street, Wilmington, Delaware, 19801. PDVH is a wholly-owned subsidiary of PDVSA.

17. Defendant PDVSA is Venezuela's national oil company, wholly owned by Venezuela and headquartered in Caracas, Venezuela.

18. Defendant PPSA is a wholly-owned subsidiary of PDVSA, headquartered in Caracas, Venezuela.

19. Defendant Rosneft is a Swiss company registered in the Canton of Geneva with its principal place of business in Geneva, Switzerland.

## Jurisdiction and Venue

20. This Court has subject matter jurisdiction over this entire action pursuant to 28 U.S.C. § 1330 and 28 U.S.C. § 1367. PDVSA is an agency or instrumentality of a foreign state within the meaning of 28 U.S.C. § 1603 and PDVSA is not entitled to immunity from subject-matter jurisdiction of this Court under 28 U.S.C. § 1605.

21. This Court has personal jurisdiction over PDVSA pursuant to 28 U.S.C § 1330(b).

22. This Court has personal jurisdiction over PPSA pursuant to 10 Del. C. § 3104 and Federal Rule of Civil Procedure 4(k). If PPSA is deemed an agency or instrumentality of a foreign state within the meaning of 28 U.S.C. § 1603, this Court also has personal jurisdiction over PPSA pursuant to 28 U.S.C § 1330(b).

23. This Court has personal jurisdiction over Rosneft pursuant to 10 Del. C. § 3104 and Federal Rule of Civil Procedure 4(k).

24. This Court has personal jurisdiction over PDVH pursuant to 8 Del. C. § 321(a), 10 Del. C. § 3111, and Federal Rule of Civil Procedure 4(k).

25. Venue is proper in this judicial district because PDVH resides in this District and because a substantial part of the events or omissions giving rise to this action occurred in this District.

**Plaintiffs Are Creditors of Venezuela, PDVSA, PPSA & PDVH**

26. Plaintiffs ConocoPetrozuata, ConocoHamaca and ConocoGulf have multi-billion dollar ICSID arbitration claims against Venezuela. *See also* **Exhibit A** at ¶¶ 3, 8, 28.

27. As detailed in the First Complaint, PDVSA is the alter ego of Venezuela. *See id.* at ¶¶ 63-72.

28. As recounted above, separate from the ICSID arbitration, Plaintiffs ConocoPetrozuata and ConocoVenezuela are each claimants in multi-billion dollar ICC Arbitrations against PDVSA, PPSA and Corpoguanipa, S.A. *See also id.* at ¶¶ 5, 29-30.

29. In addition, plaintiff ConocoGulf is a claimant in a separate, recently-filed ICC Arbitration against PDVSA and its wholly-owned subsidiary, Corporación Venezolana del Petróleo, S.A.

30. On October 6, 2016, Plaintiffs sued PDVSA, PDVH and CITGO under DUFTA. *See* **Exhibit A**. In that action, Plaintiffs seek remedies in relation to several transactions. *See id.* at ¶¶ 87.

31. As detailed in the First Complaint, aware that CITGO assets would be vulnerable to execution in the United States in satisfaction of expropriation claims, including Plaintiffs' claims, Venezuela and PDVSA developed a plan to convert the CITGO assets—including equity, refineries, plants, terminals and pipelines—to cash, and then move that cash out of the United States to Venezuela. *See id.* at ¶¶ 8-14.

32. In 2014, PDVSA announced its intention to sell CITGO (which it owns through

PDVH). According to media reports detailed in the First Complaint, PDVSA and Venezuelan government officials stated that PDVSA's intention for selling CITGO was to hinder enforcement of arbitration awards and to shield assets from creditors. *See id.* at ¶¶ 35-45.

33. After Venezuela and PDVSA were unable to sell CITGO outright, in February 2015 they instead issued CITGO debt and pledged CITGO assets to liquidate ~US $2.8 billion to fund a special dividend paid by CITGO Holding, Inc. to PDVH. PDVH then transferred the proceeds to PDVSA and PDVSA transferred them to Venezuela. Neither CITGO, nor PDVH, nor PDVSA received anything in return. *See id.* at ¶¶ 46-53.

34. As detailed in the First Complaint, PDVSA, PDVH and CITGO Holding, Inc. also removed millions of dollars in CITGO assets through a series of transactions using CITGO Petroleum as PDVSA's procurement or payment agent. *See id.* at ¶¶ 54-57.

35. Then, in October 2016, PDVSA issued billions of dollars in new debt secured by a pledge from PDVH of 50.1% of PDVH's equity in CITGO Holding, Inc. The proceeds were removed to Venezuela and PDVH received nothing in return for the pledge of 50.1% of CITGO (PDVH's only asset). *See id.* at ¶¶ 13, 58-62.

36. By the First Complaint, Plaintiffs seek DUFTA remedies against PDVSA, PDVH and CITGO in relation to those transactions. *See id.* at ¶¶ 87. Among other remedies, "a creditor may recover judgment for the value of the asset transferred" from "[t]he first transferee of the asset or the person for whose benefit the transfer was made," or from "[a]ny subsequent transferee other than a good-faith transferee or obligee." 6 Del. C. § 1308(b).

### The Rosneft Transaction

37. After Plaintiffs brought the action on October 6, 2016, Defendants completed the Rosneft Transaction on November 30, 2016. By that transaction, involving PDVSA, PDVH,

7

PPSA and Rosneft, PDVSA monetized, encumbered and transferred to Venezuela an additional ~US 1.5 billion in value out of PDVH, PPSA and CITGO.

38. In a December 23, 2016 press release, referring to the October 2016 bond swap (which is a subject of the First Complaint) and the Rosneft Transaction, PDVSA explained: "Just as PDVSA leveraged itself in October using as collateral 50.1% of Citgo for the bond swap operation, in the midst of attacks against the company and a downturn in the global oil industry, it has used the remaining 49.9% [of equity in CITGO] to raise new financing."

39. According to a UCC-1 filing by Rosneft, PDVSA raised this "new financing" from Rosneft in exchange for PDVH's pledge of all its remaining equity in CITGO Holding, Inc. and crude oil sales and/or delivery obligations undertaken or assumed by PPSA. A copy of the UCC-1 filing is appended hereto and made a part hereof as **Exhibit B**.

40. Based upon disclosures accompanying the UCC-1 filing, the Rosneft Transaction was accomplished through several interrelated agreements. Rosneft, PDVSA, PDVH and PPSA entered into a "Pledge and Security Agreement" by which PDVH pledged the remaining 49.9% of PDVH's equity in CITGO Holding, Inc. to Rosneft. *See* **Exhibit B**. Rosneft and PPSA also entered into "Commercial Export Contract No. SA 37000193," subject to a "Prepayment Addendum" between Rosneft and PPSA. *See id.*

41. According to media reports, PDVSA received ~US $1.5 billion in cash proceeds from the Rosneft Transaction.

42. Based on the disclosures appended to the UCC-1 filing, the Rosneft Transaction thus involved (a) the transfer of ~US $1.5 billion in cash from Rosneft to PDVSA, upon information and belief, styled as a prepayment to PDVSA for future crude oil sales and/or deliveries from PPSA; (b) PPSA incurring the sales and/or delivery obligations to Rosneft, for

8

nothing in return; (c) PDVH incurring the pledge of all its remaining equity in CITGO and giving it to Rosneft, for nothing in return; and (d) upon information and belief, (d) the transfer of the ~US $1.5 billion in proceeds from PDVSA to Venezuela, for nothing in return (the filing of the UCC-1 on November 30, 2016 coincides with a reported increase of ~US $891 million in Venezuela's foreign currency reserves).

43.   Further, depending on how Defendants accounted for the sales and/or crude delivery obligations, the Rosneft Transaction could also involve transfers of hydrocarbons, credits or nominal dividends from PPSA to Rosneft, notionally through PDVSA.

44.   PDVSA's December 23, 2016 press release confirms PDVSA's domination and control over its subsidiaries, including over PPSA and PDVH, and even over its notionally indirect subsidiaries, stating: "Petróleos de Venezuela, S.A. (PDVSA) maintains *full ownership and control* over Citgo Petroleum Corporation, *its* subsidiary in the United States." (emphasis added).  Recall that PDVSA owns CITGO Petroleum through PDVH and CITGO Holding, Inc.

45.   Upon information and belief, Rosneft paid the proceeds from the Rosneft Transaction to PDVSA.  Rosneft therefore knew or should have known that PDVH gave the equity pledge to Rosneft for no consideration.  Rosneft therefore knew or should have known that PPSA undertook or assumed the sales or delivery obligations to Rosneft for no consideration.

46.   PDVH and CITGO did not disclose the Rosneft Transaction in the context of relevant litigation in the prior action brought by Plaintiffs against PDVSA, PDVH and CITGO, in *ConocoPhillips Petrozuata B.V. v. Petróleos de Venezuela, S.A.*  And PDVSA and PDVH did not disclose the Rosneft Transaction in the context of relevant proceedings in another DUFTA case brought by another creditor, in *Crystallex International Corp. v. Petróleos de Venezuela,*

9

*S.A.,* No. 15 Civ. 1082 (D. Del.), including during oral argument before this Court on December 20, 2016.  Instead, investigative reporters covering Latin America discovered Rosneft's UCC-1 filing and broke the story.  Then PDVSA issued a press release on December 23, 2016.

### Count I:  Fraudulent Transfer (Actual Intent)

47. The above paragraphs are incorporated as if fully set forth herein.

48. Each of the Plaintiffs is a creditor and has a claim against a debtor in the form of Plaintiffs' respective arbitration claims against Venezuela, PDVSA and PPSA, and in the form of Plaintiffs' pending fraudulent transfer claims against PDVH.  *See* First Complaint; *see also* 6 Del. C. § 1301.

49. DUFTA provides that a transfer is fraudulent if made with actual intent to hinder, delay or defraud any creditor of the debtor.  *See* 6 Del. C. § 1304(a)(1).

50. In determining actual intent, courts look to the non-exclusive badges of fraud set forth in DUFTA, among other considerations.  The Rosneft Transaction bears several badges of fraud:

   i. The transfers were made and obligations incurred after Plaintiffs brought the arbitration claims, after Plaintiffs sued PDVSA, PDVH and CITGO in this Court under DUFTA for the prior, similar transactions, and after Crystallex International Corp. sued PDVSA and PDVH under DUFTA for a prior, similar transaction;

   ii. PDVSA, PDVH and PPSA incurred obligations and/or transferred assets for no consideration;

   iii. The transfers made and obligations incurred as between Venezuela, PDVSA, PPSA and PDVH were between and/or among insiders;

   iv. PDVH gave a pledge of all its remaining equity in its only asset, CITGO Holding, Inc.;

   v. By the Rosneft Transaction, Defendants removed assets from the United States to Venezuela and/or to Rosneft;

51. The Rosneft Transaction was undertaken with the intent to hinder, delay or defraud Plaintiffs.

### **Prayer**

52. DUFTA provides for remedies including, among others, the avoidance of transfers or obligations, judgments against transferees, injunctions against further disposition, and the appointment of a receiver to take charge of assets transferred. *See* 6 Del. C. §§ 1307-1308.

53. Plaintiffs therefore respectfully request that this Court: (a) declare the Rosneft Transaction fraudulent pursuant to DUFTA; (b) avoid transfers and/or obligations attendant to the Rosneft Transaction; (c) direct the Defendants, as may be applicable, to return any assets fraudulently transferred; (d) award money damages as may be available; (e) invalidate any security interests or other obligations as may be appropriate; (f) enjoin the Defendants from further disposing of assets; (g) appoint a receiver to take charge of assets; and (g) order such other and further legal and/or equitable relief as may be just and proper.

Respectfully submitted,

ROSS ARONSTAM & MORITZ LLP

*Of Counsel*:

Michael S. Kim
Carrie A. Tendler
Marcus J. Green
Michael A. Sanfilippo
KOBRE & KIM LLP
800 Third Avenue
New York, NY  10022
(212) 488-1200
michael.kim@kobrekim.com
carrie.tendler@kobrekim.com
marcus.green@kobrekim.com
michael.sanfilippo@kobrekim.com

Dated:  January 10, 2017

 /s/ Garrett B. Moritz
Garrett B. Moritz (#5646)
Benjamin J. Schladweiler (#4601)
100 S. West Street, Suite 400
Wilmington, DE  19801
(302) 576-1600
gmoritz@ramllp.com
bschladweiler@ramllp.com

*Counsel for Plaintiffs ConocoPhillips Petrozuata B.V., Phillips Petroleum Company Venezuela Limited, ConocoPhillips Gulf of Paria B.V., and ConocoPhillips Hamaca B.V.*